UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| WILLIAM ARMSTRONG, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| vs. | ) | Case No. 4:98CV2086 JCH |
| MIKE KEMNA, | ) |  |
| Respondent. | ) |  |

# MEMORANDUM AND ORDER

This matter is before the Court on remand from the Eighth Circuit Court of Appeals.

# BACKGROUND AND PROCEDURAL HISTORY[1]

On January 6, 1996, Petitioner William Armstrong and several companions, including Petitioner's brother, Solomon Armstrong ("Solomon"), Charles Brown ("Brown"), and Antwon Hamilton ("Hamilton"), traveled from Milwaukee, Wisconsin, to Hayti Heights, Missouri. That evening, the group went to a bar. At the bar, Terrell McGee and Diane Davis began arguing, and as the argument escalated, McGee family members, Davis family members, and Petitioner got involved. The bar owner eventually ordered everyone out of the bar, and the argument continued in the

---

[1] The Court takes its background section from the Eighth Circuit opinion remanding this case for further review of Petitioner's ineffective assistance of counsel claims. See Armstrong v. Kemna, 365 F.3d 622 (8th Cir. 2004).

parking lot. As the crowd made its way to the parking lot, shots were fired, killing Carlos McGee ("McGee"), and wounding Yolanda Childress and Devonne Davis.

Petitioner left the scene, and went to the home where he was staying. Later that evening, the police arrived and arrested Petitioner and his companions for the shootings at the bar. While the police were arresting Petitioner, shots were fired from outside the home, wounding a police officer. Emerson Branch, who was at the bar earlier in the evening, was later convicted of shooting the officer. The bullet that wounded the police officer was the same caliber as the bullets found at the bar and on McGee's hospital gurney.

Petitioner was charged with and tried for murder in the first degree, two counts of assault in the first degree, and three counts of armed criminal action. A state public defender, Ms. Jane Dunn, represented Petitioner. At trial several witnesses, all related to the McGee family, testified that Petitioner was the sole shooter. Petitioner testified that someone else did the shooting, but did not identify the shooter. Having returned to Milwaukee, Petitioner's companions did not travel to Missouri to testify at Petitioner's trial.

Petitioner's trial counsel informed the trial judge that she was unable to subpoena the out-of-state witnesses (i.e., Solomon, Brown and Hamilton), because the Wisconsin Attorney General's Office said Wisconsin would not recognize the

subpoenas. Trial counsel further informed the court she could not advance funds for transportation, due to the policies of the Missouri Public Defender's Office. She acknowledged that the Public Defender's Office would have approved sending bus tickets in advance.

On the last day of trial, trial counsel sought a short continuance to allow the Milwaukee witnesses time to travel to Missouri. During this discussion, Petitioner interrupted and told the trial court the witnesses were not present because trial counsel failed to get them there, even though he had prompted his trial counsel for months to secure the witnesses' attendance at trial. Petitioner later told the trial court he was dissatisfied with his trial counsel's representation, and had tried to remove her from his case. The trial court, which was not provided the absent witnesses' expected testimony, denied the motion for a continuance.

Petitioner's companions did not testify at trial, and Petitioner was convicted on all counts. On direct appeal, Petitioner raised two issues: (1) that the prosecutor's closing argument deprived Petitioner of due process and a fair trial; and (2) that the trial court abused its discretion in denying the motion for a continuance to secure the attendance of Solomon and Hamilton. Petitioner did not contest the sufficiency of the evidence against him. The Missouri Court of Appeals held the trial court (1) did not err in allowing the closing argument, and (2) did not abuse its discretion in denying

the motion for a continuance. In deciding the continuance issue, the Missouri Court of Appeals stated Petitioner's argument did not yield "a clue about what these witnesses would have testified to or how their testimony would have aided the defense." The Missouri Court of Appeals further concluded the trial record revealed Petitioner could not have secured the presence of his witnesses, "any time in the reasonably foreseeable future." Thus, the Missouri Court of Appeals affirmed the judgment against Petitioner. Petitioner then sought post-conviction relief, but neither the state trial court nor the Missouri Court of Appeals considered the merits of the claims, because Petitioner filed the post-conviction relief motion out-of-time.

Petitioner filed his application for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court on December 17, 1998, raising numerous grounds for relief. In his habeas application, Petitioner swore his "witnesses would have testified that I did not have a weapon, nor was I arguing with anybody, and that someone else from the McGee family were [sic] shooting at us. Someone who they were arguing with in the club. My witnesses' names are Antwon Hamilton, Solomon Armstrong, and Charles Brown."

In a hearing held February 14, 2002, this Court secured the testimony of trial counsel, who stated that she or her investigator had spoken to all three out-of-state witnesses. Trial counsel said Brown would have testified he did not witness the

shooting, but never saw Petitioner with a gun. Trial counsel further said Hamilton and Solomon would have testified that although they could not identify the shooter, Petitioner was not the shooter.

At the hearing, trial counsel testified that she had considered two options to secure the attendance of the witnesses at trial: (1) to send what she believed to be an unenforceable subpoena and expense money to the witnesses; or (2) to send bus tickets to the witnesses, with a promise to pay for their lodging and meals. Trial counsel decided against the first option, because the subpoena would be unenforceable. Trial counsel then testified that the second option fell through, because although the out-of-state witnesses indicated they would testify at Petitioner's trial, she could not contact the witnesses to make the arrangements.[2] None of the out-of-state witnesses contacted trial counsel until the first day of trial, when Solomon called trial counsel and told her he would travel by bus to Missouri that night to testify at his brother's trial. Trial counsel arranged for Solomon to call her when he arrived in Missouri, but Solomon never called.

This Court found sufficient cause to excuse Petitioner's procedural default in state court, because a state-employed prison librarian had given Petitioner the wrong

---

[2] Trial counsel testified that she had arranged a conference call with Solomon and Hamilton a week before trial to discuss travel arrangements, but when she initiated the call, Petitioner's mother answered and said one of the witnesses was sleeping, and the other witness was not there.

deadline for filing his post-conviction relief motion. Thereafter, this Court denied Petitioner's habeas application in its entirety.

On appeal of this Court's Order, Petitioner's court-appointed attorney argued two points. First, he contended the state court denied Petitioner a fair trial, by denying a continuance to secure the attendance of Petitioner's out-of-state witnesses to testify at trial. Second, he contended trial counsel was ineffective, for failing to secure the attendance of Petitioner's out-of-state witnesses at trial.[3] In its Order, the Eighth Circuit held in relevant part as follows:

> **C.  Ineffective Assistance of Counsel**
>
> Armstrong's overriding complaint is his out-of-state witnesses did not testify at his trial, but should have. Armstrong contends his trial counsel's deficient performance was of constitutional proportion. To prove his counsel rendered ineffective assistance, Armstrong must satisfy the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Armstrong must show his counsel's performance was deficient, i.e., objectively unreasonable. Id. at 688, 104 S.Ct. 2052. Armstrong must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Second, even if Armstrong satisfies the first prong, he must show the deficient performance prejudiced him with an unreliable or fundamentally unfair outcome. Id. at 692.
>
> **1.  Failure to Secure Attendance of Witnesses**
>
> Armstrong claims trial counsel's "misconduct in fumbling the attendance of the witnesses raises [sic] to a level near that of res ipsa

---

[3] Petitioner individually submitted a number of pro se briefs, raising claims of actual innocence.

loquiter [sic]." Armstrong complains that "[b]ringing exculpatory witnesses to trial is clearly a reasonable obligation of a trial attorney and the failure to do so cannot be defended as a sound trial strategy." Armstrong claims he suffered prejudice because he was forced to endure a trial for his life based on shaky evidence, "state witnesses with an ax to grind," and without the assistance of favorable witnesses. [FN3]

FN3. We recognize Armstrong personally did little to secure the attendance of his brother and traveling companions at trial. The record paints a picture of witnesses not the least bit motivated to travel to Missouri to testify in this murder case. Regardless of the amount or lack of assistance provided to trial counsel by Armstrong and his witnesses, the proper focus is on trial counsel's performance. Could trial counsel have compelled the witnesses' attendance? Was trial counsel's performance objectively unreasonable and prejudicial to Armstrong's defense?

The testimony of Armstrong's companions was obviously important in this murder case. Trial counsel knew this and attempted to secure the attendance of these witnesses at trial. The district court found trial counsel explored two options to secure the attendance of Armstrong's witnesses, and chose to implement one option. Theorizing the failure of the witnesses to appear at trial may have been based on "miscommunication or lack of initiative on the part of the witnesses," the district court concluded trial counsel's efforts to get Armstrong's out-of-state witnesses to appear at trial were not objectively unreasonable.

For reasons unknown to us, the record does not reference two statutes which are critical to disposing of Armstrong's ineffective assistance claims. Both Missouri and Wisconsin previously adopted the Uniform Act to Secure the Attendance of Witnesses From Without the State in Criminal Proceedings (Uniform Act). See, e.g., Mo.Rev.Stat. § 491.420 (witnesses from another state summoned to testify in this state); Wis. Stat. § 976.02 (uniform act for the extradition of witnesses in criminal actions). Trial counsel could have secured the attendance of the out-of-state witnesses at trial had she availed herself of these statutes. However, the record does not mention these statutes or whether trial

counsel, or the various courts, considered these statutes. Therefore, we remand this issue to the district court to review Armstrong's ineffective assistance claim in light of these statutes. If the district court believes an evidentiary hearing is necessary, it shall conduct one and make findings of fact. When analyzing the impact of these statutes on the ineffective assistance claim, the district court should address both prongs of the Strickland analysis, providing the court's findings of fact and conclusions of law. See, e.g., Garton v. Swenson, 497 F.2d 1137, 1140 (8th Cir.1974), remanded to 417 F.Supp. 697 (W.D.Mo.1976); see also Scott v. Roberts, 777 F.Supp. 897, 898 (D.Kan.1991); Davis v. Coiner, 356 F.Supp. 695, 698 (N.D.W.Va.1973).

### 2. Failure to Secure Continuance

Missouri has detailed procedural rules to secure trial continuances. See Mo. Sup.Ct. R. 24.09, 24.10. Armstrong's trial counsel failed to follow these procedural rules when requesting a continuance, and the trial court did not mention the rules in denying the continuance. The district court concluded trial counsel's failure to comply with the continuance rules or to secure a continuance did not constitute ineffective assistance of counsel. Armstrong has not raised, briefed, or argued this issue. Instead, Armstrong focuses on trial counsel's failure to secure the attendance of the witnesses at trial. We believe the resolution of the unresolved issue discussed above may impact the resolution of this issue as well. Thus, we also remand this issue to the district court to analyze the Uniform Act's impact, if any, on the ineffective assistance claim regarding trial counsel's failure to secure a continuance.[4]

Armstrong v. Kemna, 365 F.3d at 627-28 (footnote omitted).

On June 17, 2004, this Court ordered the parties to file briefs addressing: (a) the impact of the Uniform Act on Petitioner's claim of ineffective assistance of

---

[4] The Eighth Circuit affirmed this Court's denial of Petitioner's request for habeas relief on all other grounds.

counsel, with respect to counsel's failure to secure the attendance of witnesses; (b) the impact of the Uniform Act on Petitioner's claim of ineffective assistance of counsel, with respect to counsel's failure to secure a continuance; and (c) the perceived necessity of conducting an evidentiary hearing on the aforementioned issues. (Doc. No. 85). The parties have filed their briefs, and the matter is now ready for disposition.[5]

## DISCUSSION

### I. Failure To Secure Attendance Of Witnesses

As stated above, in its opinion the Eighth Circuit Court of Appeals instructed this Court to review Petitioner's ineffective assistance claim in light of the Uniform Act to Secure the Attendance of Witnesses From Without the State in Criminal Proceedings, Mo.Rev.Stat. § 491.420 and Wis. Stat. § 976.02. As recognized by the Eighth Circuit, trial counsel could have secured the attendance of Petitioner's out-of-state witnesses at trial, had she availed herself of these statutes. This Court therefore must consider whether trial counsel's failure to do so constituted ineffective assistance of counsel.

In order to establish ineffective assistance of counsel, Petitioner must satisfy the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,

---

[5] Upon consideration of the record in its entirety, the Court finds it unnecessary to conduct a second evidentiary hearing in this matter.

80 L.Ed.2d 674 (1984). Petitioner must demonstrate: (1) "that counsel's performance was deficient;" and (2) "that the deficient performance prejudiced the defense." Id. at 687. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, Petitioner must prove that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Upon consideration, the Court finds Petitioner fails to satisfy the first prong of the Strickland test, i.e., that his trial counsel's performance was deficient. Specifically, the Court finds the actions Petitioner's trial counsel took in attempting to secure the attendance of Petitioner's out-of-state witnesses were sufficient to satisfy her burden under Strickland. For example, trial counsel first, "called the Attorney General's Office in Wisconsin to find out if they were part of the interstate compact[6]

---

[6] The Court finds that although trial counsel makes repeated references to the "interstate compact," she in fact means the Uniform Act. As support for this finding, the Court notes that in the Motion for a New Trial she filed on Petitioner's behalf, trial counsel made a specific reference to the Uniform Act in one

and what [she] needed to do to make arrangements to get them subpoenaed." (Evidentiary Hearing Transcript, P. 14). The Court finds that in making this telephone call, trial counsel evidenced her familiarity with Mo.Rev.Stat. § 491.420, and Missouri's participation in the Uniform Act to Secure the Attendance of Witnesses From Without the State in Criminal Proceedings. Petitioner's case thus is distinguishable from Garton v. Swenson, in which trial counsel stipulated to his lack of familiarity with Missouri's out-of-state subpoena statute. Garton v. Swenson, 417 F.Supp. 697, 700 (W.D. Mo. 1976).

Further, trial counsel's testimony demonstrates that she took reasonable steps to determine whether Wisconsin had adopted the Uniform Act. Throughout this case, Petitioner's trial counsel has maintained that she contacted the Wisconsin Attorney General's Office, and was informed that Wisconsin did not participate in the Interstate Compact. For example, during the presentation of Petitioner's motion for a continuance at trial, the following exchange took place:

> The Court: Ms. Dunn, just for the record, Wisconsin is not part of our Interstate Compact as far as out-of-state acquiring attendance for out-of-state witnesses; is that correct?
>
> Ms. Dunn: No. I called the attorney general's office and they said no.

(Trial Transcript, Respondent's Exh. B-III, P. 392; see also Evidentiary Hearing

---

of her arguments. (See Legal File, Respondent's Exh. A, P. 63).

Transcript, P. 14 ("It's my understanding they [Wisconsin] are not part of the interstate compact")). Trial counsel thus attempted to determine whether Wisconsin participated in the Uniform Act, and the Court finds her efforts in this regard were reasonable. In other words, the Court finds trial counsel was justified in believing the Wisconsin State Attorney General's Office, the department charged with enforcing the laws of the state, when it informed her Wisconsin did not participate in the Uniform Act.[7]

As explained in this Court's earlier Order, based on her understanding that Wisconsin was not part of the interstate compact, trial counsel then believed she had two options for securing the attendance of these witnesses: one, to issue a presumably unenforceable subpoena, accompanied by a modest witness fee and mileage; or two, to send bus tickets to the witnesses in advance, with the promise of then reimbursing the witnesses' expenses for lodging and meals in Missouri.

With respect to the first option, trial counsel testified that she decided against it because she believed the subpoena was unenforceable, and her office had concerns about advancing mileage expenses to witnesses who could not be compelled to attend

---

[7] As pointed out in the Eighth Circuit's opinion, the information trial counsel received from the Wisconsin Attorney General's Office proved to be wrong; in other words, Wisconsin had adopted the Uniform Act at the time of Petitioner's trial. While this circumstance is unfortunate, the Court refuses to find that in relying on the assurance of the Wisconsin Attorney General's Office with respect to Wisconsin's non-participation, trial counsel actions were, "outside the wide range of professionally competent assistance" sanctioned by Strickland.

trial. Specifically, when asked the policy of the Public Defender's Office in regard to out-of-pocket expenses to secure the attendance of witnesses in states that were not part of the interstate compact, trial counsel testified as follows: "I explained the situation to my supervisor, Peter Stoeling, who is the head of our trial division, and I explained the situation to him, and we had decided that it was best that we would either purchase the bus ticket for them or that they could come down to New Madrid County and we would reimburse them for their expenses." (Evidentiary Hearing Transcript, P. 15).

Upon consideration, the Court finds that trial counsel's actions in this regard were not constitutionally deficient under Strickland. In other words, in light of all the circumstances, including the fact that the Wisconsin Attorney General's Office had informed her the state did not participate in the Uniform Act, trial counsel's decision not to issue a subpoena to secure the attendance of Petitioner's witnesses was within the wide range of professionally competent assistance sanctioned by Strickland. Strickland, 466 U.S. at 690.

With respect to the second option, i.e., sending bus tickets to the witnesses in advance, with the promise of then reimbursing their expenses for lodging and meals in Missouri, trial counsel testified that the witnesses had previously indicated a willingness to testify at Petitioner's trial. Counsel then testified that she set up a

- 13 -

telephone conference to discuss the specifics of the travel arrangements with Solomon Armstrong and Antwon Hamilton through their mother for a Sunday afternoon more than a week prior to trial. (Evidentiary Hearing Transcript, P. 18). When counsel made the call, however, the mother answered the telephone and said that one of the men was sleeping and could not be disturbed, and the other was not home. (Id.).

Counsel testified that the none of the witnesses contacted her again until the evening of the first day of trial, when Solomon Armstrong called to tell counsel that he had made bus reservations and was leaving that night for Sikeston, Missouri, in order to be present to testify. (Evidentiary Hearing Transcript, P. 20). Counsel stated she was under the impression that Solomon Armstrong had purchased his own bus ticket, and would be reimbursed when he arrived. (Id., PP. 40-41). They arranged for Armstrong to call when he arrived in Missouri, but he never called. (Id., PP. 20-21).

Upon consideration, the Court again finds that counsel's actions were not objectively unreasonable in this instance, as trial counsel took reasonable steps to secure the witnesses' attendance. The Court does not find trial counsel was required to forward bus tickets to the witnesses unilaterally, without ever having discussed the specifics of the travel arrangements. Thus, the Court holds trial counsel's actions in attempting to secure the witnesses' voluntary attendance fell within the wide range of professionally competent assistance sanctioned by <u>Strickland</u>, 466 U.S. at 690, and so

Petitioner's request for habeas relief on this ground must be denied.[8]

## II. Failure To Secure Continuance

As stated above, the Eighth Circuit further instructed this Court to, "analyze the Uniform Act's impact, if any, on the ineffective assistance claim regarding trial counsel's failure to secure a continuance." Armstrong v. Kemna, 365 F.3d at 628. In its earlier Order, this Court concluded trial counsel's failure to comply with the continuance rules or to secure a continuance did not constitute ineffective assistance of counsel. The Court now holds that consideration of the Uniform Act does not necessitate a different ruling.

Missouri has detailed procedural rules to secure trial continuances. Rule 24.09 requires that a motion for continuance be made in a written motion, accompanied by an affidavit of the applicant or other credible person setting forth the facts on which the application is based, unless the opposing party consents to an oral motion.

Rule 24.10 provides:

An application for a continuance on account of the absence of witnesses or their evidence shall show:

    (a)    The facts showing the materiality of the evidence sought to be obtained and due diligence upon the part of the applicant to obtain

---

[8] In light of the Court's ruling that trial counsel's performance was not deficient, it need not consider whether Petitioner suffered prejudice. In other words, while the prejudice to Petitioner may be assumed in this case, the Court finds it would eviscerate the requirements of Strickland to grant relief on an ineffective assistance of counsel claim without first finding counsel's performance was constitutionally deficient.

such witnesses or testimony;

(b) The name and residence of such witness, if known, or, if not known, the use of diligence to obtain the same, and also facts showing reasonable grounds for belief that the attendance or testimony of such witness will be procured within a reasonable time;

(c) What particular facts the affiant believes the witness will prove, and that he knows of no other person whose evidence or attendance he could have procured at the trial, by whom he can prove or so fully prove the same facts;

(d) That such witness is not absent by the connivance, consent, or procurement of the applicant, and such application is not made for vexation or delay, but in good faith for the purpose of obtaining a fair and impartial trial.

If the court shall be of the opinion that the affidavit is insufficient it shall permit it to be amended.

See Mo.Sup.Ct.R. 24.09, 24.10. Petitioner's trial counsel admittedly failed to follow these procedural rules when requesting a continuance.

Upon consideration, however, the Court finds Petitioner fails to demonstrate the requisite prejudice with respect to this claim. For example, although counsel orally presented her request for a continuance, there is absolutely no indication in the record that the trial judge would have ruled more favorably had the motion been made in writing.

Further, while trial counsel could have presented an affidavit indicating the anticipated testimony of the missing witnesses, due to her misinformation regarding

Wisconsin's participation in the Uniform Act, she could not have presented, "facts showing reasonable grounds for belief that the attendance or testimony of such witness[es] will be procured within a reasonable time," as required by Rule 24.10(b). Without such information, the Court finds no indication the ruling on her motion for a continuance would have been different, even had she presented all the information at her disposal. (<u>See, e.g.</u>, Trial Transcript, Respondent's Exh. B-III, PP. 394-95 ("They [Petitioner's witnesses] weren't here yesterday. Are not here at this time. They have not contacted the Court. It's 9:15 in the morning at this time. I [the trial judge] don't know, you know, I can't continue this case indefinitely just upon the speculation that these folks might make themselves available at some date in time to testify."). Thus, the Court finds that Petitioner fails to demonstrate the requisite prejudice with respect to his claim of ineffective assistance of counsel in failing to secure a continuance.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that William Armstrong's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner be granted a Certificate of Appealability with respect to all issues covered in this Memorandum and Order.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Appointment of Counsel (Doc. No. 92) is **DENIED**.

Dated this 15th day of December, 2005.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE